UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KATHLEEN CALKIN, as personal
representative of the estate of PAUL D.
CALKIN,

       Plaintiff,

v.

COUNTY OF WEXFORD, et al.,

       Defendants.

_____/

Case No. 1:24-cv-429

Hon. Hala Y. Jarbou

## ORDER REGARDING REPORT AND RECOMMENDATION

Before the Court are the objections of Defendants Advanced Correctional Healthcare (ACH), Marylee Pakieser, Barbara Smith, and Jessica Stevens to the report and recommendation of the magistrate judge (R&R, ECF No. 88) regarding Defendants' motion to dismiss this suit. The magistrate recommends dismissing Plaintiff's Eighth Amendment claim against ACH for failing to allege that ACH, which is clothed with the authority of Wexford County by virtue of its contract to service the municipality's jail, had a policy or custom that led the three individual movants—medical professionals employed by ACH—to act with deliberate indifference to the medical needs of Paul Calkin, a prisoner who was hospitalized and later died from sepsis shortly after his incarceration at the county jail. The R&R further recommends dismissing claims against ACH brought under two Michigan statutes regulating the conduct of medical entities, a class to which ACH contends it does not belong. By contrast, the R&R proposes allowing the claims against the medical-professional Defendants to proceed to discovery because Plaintiff has adequately pleaded that they were deliberately indifferent to Calkin's medical needs, in violation of the Eighth Amendment.

Defendants timely objected to two aspects of the R&R. (ECF No. 89.) First, they argue that the R&R should have proposed dismissing the Eighth Amendment claims against the medical professionals too, because the complaint does not delineate how each professional individually exhibited deliberate indifference to Calkin's health or allege that the professionals knew Calkin was suffering from a life-threatening infection. Second, they contend that the magistrate judge erred in not recommending that the common-law negligence claims alleged against ACH should be dismissed along with the claims arising under state statute. Plaintiff urges that these objections be overruled and the R&R adopted in full; in the alternative, she requests leave to amend her complaint. (ECF No. 90.)

The Court adopts a middle course. Having reviewed the R&R de novo, *United States v. Shami*, 754 F.2d 670, 672 (6th Cir. 1985), the Court finds it mostly persuasive but undertakes a more particularized analysis of the professional Defendants' individual responsibility under the Eighth Amendment. The Court also declines to prohibit Plaintiff from amending her complaint should she choose to. The R&R is approved of in all other respects.

## I. STANDARD OF REVIEW

The Court reviews determinations in an R&R that are objected to de novo. *Gordon v. Caruso*, 720 F. Supp. 2d 896, 898 (W.D. Mich. 2010).

A plaintiff's complaint must make a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The statement must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "[t]he plausibility standard . . . is not akin to a probability requirement . . . [,]it asks for more than a sheer possibility" that the alleged misconduct occurred. *Id*. "Specific facts are not necessary; the statement need only give the defendant fair notice of

what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

When considering a motion to dismiss under Rule 12(b)(6), courts "construe the complaint in the light most favorable to the plaintiff, accepting all well-pleaded factual allegations as true." *Parrino v. Price*, 869 F.3d 392, 397 (6th Cir. 2017).  The Court need not accept "threadbare recitals of the elements of a cause of action[] supported by mere conclusory statements," *Iqbal*, 556 U.S. at 678, or "formulaic recitations of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

Courts are generally bound to consider only the complaint when resolving a motion to dismiss under Rule 12(b)(6) unless the Court converts the motion to one for summary judgment. *Wysocki v. IBM Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010).  "However, a court may consider exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016) (citations omitted).[1]

---

[1] Defendants urge the Court to consider the exhibits appended to their motion on the basis that they are public records. Defendants represent that the first of these exhibits is the "jail's court documents provided by Plaintiff." (Mot. to Dismiss 1, ECF No. 41.)  It is doubtful that this exhibit even qualifies as a public record for purposes of adjudicating a 12(b)(6) motion. *See Blackwell v. Nocerini*, 123 F.4th 479, 488 (6th Cir. 2024) (questioning whether a police report and timeline are "subject to judicial notice at the pleading stage").  A court docket, on the other hand, is a record of judicial acts whose accuracy is not subject to reasonable dispute, so it is a proper object of judicial notice. *See United States v. Ferguson*, 681 F.3d 826, 834 (6th Cir. 2012).  The docket makes clear that Calkin was serving a six-month sentence, so Plaintiff's claims regarding his mistreatment must be analyzed under the Eighth Amendment rather than the Fourteenth Amendment, notwithstanding the fact that Calkin was incarcerated in the county jail. *See Howell v. NaphCare, Inc.*, 67 F.4th 302 (6th Cir. 2023) (explaining that a pretrial detainee alleging deliberate indifference need only establish "civil-law recklessness" as opposed to the "criminal-law recklessness" a prisoner serving their sentence must prove), *cert. dismissed sub nom. Erwin v. Howell*, 145 S. Ct. 110 (2024), *and sub nom. Jordan v. Howell*, 145 S. Ct. 113 (2024).  Although the complaint alleges violations of both constitutional provisions, the magistrate found that the Eighth Amendment standard applies (R&R 10), and Plaintiff did not object to that determination.  Consequently, the Court evaluates Calkin's treatment against the Eighth Amendment standard alone.

3

## II. DISCUSSION

Defendants raise two objections to the R&R.  First, they contend that the facts pled in the complaint are insufficiently particularized to plausibly allege that the three medical professionals were each deliberately indifferent to the collapse of Calkin's health.  Second, they argue that all of Plaintiff's common-law claims against ACH fail because it is not a hospital or health care agency within the meaning of Michigan's licensing statute.  Neither objection can be sustained.

### A. Medical Professionals (Count VIII)

The Eighth Amendment's prohibition against cruel and unusual punishment is violated when a prison official acts "with 'deliberate indifference' toward the inmate's serious medical needs." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  This standard has two components: a "sufficiently serious" medical need, *Phillips v. Tangilag*, 14 F.4th 524, 534 (6th Cir. 2021), and disregard of that need by a prison official who knows about it, *id.* at 535.  Courts refer to these as the objective and the subjective component, respectively.  *Rouster v. County of Saginaw*, 749 F.3d 437, 446 (6th Cir. 2014).  A medical need is sufficiently serious if it "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (quoting *Blackmore*, 390 F.3d at 897).  The Sixth Circuit has "routinely held that a condition resulting in death is 'sufficiently serious' to meet the objective component." *Burwell v. City of Lansing*, 7 F.4th 456, 463 (6th Cir. 2021) (collecting cases).

To establish that an official was deliberately indifferent to the plaintiff's medical need, it must be proven that the official knew about the medical need and "drew the inference" that that need posed a "substantial risk of harm" yet "consciously disregarded" it.  *Jones v. Muskegon County*, 625 F.3d 935 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).  An

official can be deliberately indifferent even if they administer some measure of medical treatment if that care is "grossly or woefully inadequate." *Phillips*, 14 F.4th at 535.  The Court will only find inadequacy if the care provided is "so cursory as to amount to a conscious disregard of [the prisoner's] needs." *Rouster*, 749 F.3d at 448.

Defendants object to the magistrate judge's failure to undertake an individualized analysis of Plaintiff's allegations against each Defendant.  Had the R&R evaluated the complaint in this way, Defendants argue, the magistrate would have recommended dismissing the Eighth Amendment claims against all the medical Defendants, not just ACH.  (Defs.' Objs. 10, ECF No. 89.)

The Court agrees that the magistrate judge should have undertaken a more fine-grained analysis.  When adjudicating a claim that a government official has violated a constitutional right, "[e]ach defendant's liability must be assessed individually based on his own actions." *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010); *see also Lanman v. Hinson*, 529 F.3d 673, 684–85 (6th Cir. 2008) (reversing denial of summary judgment in favor of all defendants against a deliberate-indifference claim because "the district court failed to separately analyze the constitutionality of the individual actions of each defendant"); *Heyne v. Metro. Nashville Pub. Schs.*, 655 F.3d 556, 564 (6th Cir. 2011).  The Court therefore addresses each individual Defendant in the order they are mentioned in the Complaint.

### 1. Clarifying the Objective Inquiry

Defendants seem to believe that to be held liable for this claim, they must have known that Calkin was battling a life-threatening infection.  (Objs. 9.)  They make much of the fact that the infection was not diagnosed when Calkin was first hospitalized; if a doctor and nurse practitioner at a hospital missed the infection, the argument seems to go, then a nurse practitioner and two nurses working at a jail should not be held to have violated the Constitution for making the same

5

mistake.  Defendants assert that the "benefit of hindsight cannot satisfy the objective prong of a deliberate indifference claim."  (*Id.* at 12.)

This line of reasoning conflates the subjective prong with the objective prong, which by definition does not have a knowledge requirement.  Recall that the standard for determining whether a medical need is "sufficiently serious" is whether it "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Blackmore v. Kalamazoo County*, 390 F.3d 890, 897 (6th Cir. 2004) (emphasis omitted) (quoting *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 208 (1st Cir. 1990)).  The purpose of the "obviousness" standard is to include within the Eighth Amendment's coverage medical debilities so severe that they result in unmistakable indicia of a serious medical need, even if the precise nature of that debility is not understood by those responsible for ameliorating it.  The Sixth Circuit recently made a similar point when cautioning against allowing "a defendant's own understanding" of the prisoner's medical situation to "swallow the entire objective component of the deliberate-indifference inquiry." *Grote v. Kenton County*, 85 F.4th 397, 407 (6th Cir. 2023).

Precedent confirms this interpretation of the objective prong.  In a case with similarities to this one, the Sixth Circuit held that it was "clear that [the decedent] suffered from a serious, indeed dire, medical need while he was held" at a county jail because he "succumbed to sepsis and died" within days of his transfer to that facility.  *Rouster v. County of Saginaw*, 749 F.3d 437, 446 (6th Cir. 2014).  The court expressly cabined the inquiry into the officer's knowledge to the subjective prong, holding that the prong was not satisfied precisely because the plaintiff failed to "show[] that [the defendant] was in fact aware that [the decedent] had a serious medical need."  *Id.* at 448. Whether the severity of the illness was diagnosed or merely inferred from its symptoms, it is its

severity—not the official's *awareness* of that severity—that determines whether the objective prong is satisfied.  An infection so extensive that it causes septic shock followed by death plainly passes the bar.

Defendants' knowledge of the seriousness of Calkin's condition is instead relevant to the subjective prong.  While Defendants' (and the outside medical staff's) misdiagnosis of Calkin's symptoms bears on whether they knew the grave risk their ineffectual treatment plan posed to Calkin's health, it is not the only consideration.  Equally relevant, if not more so, is the awareness that can be inferred from circumstantial evidence, including "the very fact that the risk was obvious." *Burwell v. City of Lansing*, 7 F.4th 456, 467 (6th Cir. 2021) (quoting *Rouster*, 749 F.3d at 447).  Plaintiff alleges that Calkin was yelling to himself, running into and out of the shower, sitting naked in his cell, and exhibiting other worrisome behavior the day before his second hospitalization.  (Compl. ¶ 83.)  These facts, accepted as true, support a finding that at least some Defendants knew that Calkin's condition was more serious than initially believed, even if they did not recognize the root of Calkin's illness.  In a case claiming that a prison official was deliberately indifferent to a prisoner's being at risk for suicide, the "relevant question [wa]s not whether [the defendant] recognized that [the decedent] might kill himself" but whether she "recognized that [the decedent] was suffering from a serious mental illness creating a host of risks and requiring immediate treatment." *Bays v. Montmorency County*, 874 F.3d 264, 269 (6th Cir. 2017) (citing *Blackmore*, 390 F.3d at 899); *see Jones v. Corr. Med. Servs., Inc.*, 845 F. Supp. 2d 824, 839 (W.D. Mich. 2012) ("The law does not require [the p]laintiff to show that [the defendant] had diagnosed [the decedent's] exact disease in order to prove that he acted with deliberate indifference to the risk.").  The same is true here: as the case progresses, much will depend on each Defendant's training and experience and the symptoms commonly associated with sepsis resulting from a

systemic bacterial infection.  There will be time enough to conduct that assessment at summary judgment, when Plaintiff will have had the benefit of discovery into what Defendants actually knew.  But that time is not now.

### 2. Nurse Practitioner Pakieser

Turning to the individualized assessment, Plaintiff has more than surpassed her pleading hurdle with respect to NP Pakieser.  Defendants' primary argument to the contrary is that Pakieser was named alongside all other Defendants as having been aware of the discharge instructions the hospital allegedly provided to the county jail for Calkin's continued treatment and having disregarded those instructions.  (Objs. 3–4; *see* Compl. ¶¶ 73–75.)  If that is all that the complaint said about NP Pakieser's involvement in Calkin's treatment, this argument would have more force.  After all, as Defendants correctly point out, Plaintiff does not allege with much detail when and how Pakieser was individually informed of the discharge instructions she is accused of ignoring.  *Cf. Rhinehart v. Scutt*, 894 F.3d 721, 743 (6th Cir. 2018) (holding subjective component not satisfied when plaintiff failed to show that treating doctor knew of specialist's recommended treatment plan).  But this deficiency is not fatal to the claim against Pakieser, because Plaintiff alleges facts indicating that her subsequent treatment of Calkin based only on his observable symptoms was so cursory that it "amount[ed] to no treatment at all."  *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)).

It is true, as Defendants emphasize and as the R&R recognized, that "prisoners must show more" when they allege not the outright denial of treatment but that the medical care they were provided was inadequate to their needs.  *Phillips*, 14 F.4th at 535.  But courts in this circuit have long entertained deliberate-indifference claims that allege "grossly inadequate care."  *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843–44 (6th Cir. 2002).  Providing "easier and less efficacious treatment" than what is medically indicated may also "suffice to establish

deliberate indifference." *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017) (quoting *Warren v. Prison Health Servs., Inc.*, 576 F. App'x 545, 552 (6th Cir. 2014)).  "[O]fficials cannot escape a deliberate-indifference claim by fetching a band-aid if an inmate is hemorrhaging." *Finley v. Huss*, 723 F. App'x 294, 298 (6th Cir. 2018).

Plaintiff has satisfactorily alleged that NP Pakieser's treatment of Calkin was equally wanting.  In addition to the omnibus allegation that all Defendants, including Pakieser, did not follow the discharge instructions, the complaint further alleges that a correctional officer told Pakieser the day after Calkin returned to jail that he was "lying in bed" and "asking for help" because he had "fainted and needed to go back to the emergency room."  (Compl. ¶ 76.)  In response to this report, Pakieser directed the CO to give Calkin some Motrin and hydroxyzine, an antianxiety drug.  (*Id.* ¶ 77.)  Pakieser made her assessment over the phone.  (*Id.* ¶ 78.)  Twice on the day after that, Pakieser was advised of Calkin's continuing deterioration; the first time she told the jail staff to take his vitals, and the second time she told them to give him another dose of hydroxyzine (this time omitting the Motrin despite Calkin's continued head pain).  (*Id.* ¶¶ 79–82.) These allegations state a plausible deliberate-indifference claim under the Eighth Amendment. Defendants' objection to the magistrate's recommendation that the suit against Pakieser be permitted to continue is therefore overruled.

### 3. Nurse Stevens

Defendants argue that the complaint does not allege any involvement by Nurse Stevens in Calkin's treatment after her treatment of him and his resultant admission to a hospital.  In her response to Defendants' objections, Plaintiff argues that the complaint alleges that all Defendants ignored the treatment instructions provided upon Calkin's discharge from the hospital and that the complaint need not reiterate that allegation against each Defendant individually.

Although the allegations against Stevens are a closer call than those against Pakieser, the Court finds those allegations sufficient to survive dismissal. The sum total of the allegations specific to Nurse Stevens about her treatment of Calkin is that on May 29 she "indicated" (to whom is left unstated) that Calkin's vitals were irregular (Compl. ¶¶ 61–62) and that Calkin told her he had been suffering from headaches, blurred vision, and an open wound since being assaulted two weeks before (Compl. ¶¶ 64–65). The two remaining factual allegations concerning Stevens state that she was among the Defendants who were advised by Calkin's hospital discharge instructions to monitor his condition and provide antibiotics but failed to do so. (Compl. ¶¶ 74–75.) Although the allegation that every Defendant knew of the discharge instructions and did nothing to abide by them is generalized in nature, the fact that Stevens is individually named, in conjunction with the allegations concerning her prehospitalization treatment of Calkin, are enough to tip the claim against Stevens beyond being conclusory. So Defendants' objection as to Stevens is also overruled.

### 4. Nurse Smith

Rehashing their arguments against finding Stevens liable, Defendants argue that the absence of any individualized allegations against Nurse Smith doom Plaintiff's claim against her. But the complaint says more about Nurse Smith's involvement in Calkin's treatment than it does Nurse Stevens's. In addition to allegedly being informed about the hospital discharge instructions and failing to implement them, the complaint also sets out specific facts about Nurse Smith's treatment of Calkin on June 1 and June 2. When she became aware of Calkin's aberrant behavior on June 1, Smith is alleged to have refrained from performing an assessment of Calkin's condition and not have apprised a doctor or NP Pakieser of Calkin's latest symptoms. Nurse Smith instead told the corrections officers to stop providing Calkin the hydroxyzine that NP Pakieser prescribed. (Compl. ¶¶ 83–85.) Nurse Smith refrained from providing Calkin with any form of treatment even

after being informed the morning of June 2 that Calkin's condition had deteriorated overnight.  (*Id.* ¶¶ 86–87.)  Calkin was not provided with any treatment until being admitted to the hospital a second time—a decision made by the jail staff and not Nurse Smith.  (*Id.* ¶ 88.)

These allegations are particularized enough to state a claim against Nurse Smith.  Plaintiff's allegations about Nurse Smith's treatment of Calkin, if true, could support a finding that Nurse Smith not only failed to treat Calkin adequately, as with NP Pakieser, but refrained from treating him at all.  It is a close question whether one medical professional's ceasing to administer a drug without implementing any other treatment regimen constitutes a denial of care or if medical attention from other professionals should be considered when evaluating the ministrations of one of them.  The complaint does not specifically state that Smith knew why NP Pakieser prescribed the hydroxyzine or if she consulted with a physician or another medical professional before directing that Calkin no longer be treated with the drug.  But it is sufficient at the pleading stage for Plaintiff to allege that Smith interrupted Calkin's ineffective treatment without directing that any other regimen be initiated.  Defendants' objections to permitting the claims against Smith to proceed are therefore overruled.

### B. Common-Law Claims Against ACH (Count IV)

Defendants' second objection to the R&R is that it does not recommend the dismissal of the common-law negligence and medical malpractice claims raised against ACH in addition to the magistrate's recommendation that claims premised on two Michigan statutes governing the licensing and activities of "health facilities and agencies," Mich. Comp. Laws § 333.20141, or "hospitals," Mich. Comp. Laws § 333.21513, be dismissed on the grounds that ACH is not a health facility or agency or a hospital.  (Objs. 13.)

As a threshold matter, the R&R erred in characterizing the fourth count of the complaint as "alleging a violation of a statutory duty" imposed by the cited state statutes independent of the

negligence and malpractice causes of action the fourth count invokes.  As the R&R recognizes, Plaintiff only refers to these statutes to establish the standard of care ACH allegedly failed to maintain.  That the statutes do not impose a duty on an entity like ACH that is outside of their coverage does not necessarily affect any of Plaintiff's common-law claims so long as another source of duty is alleged.  That source appears to be set out in paragraph 128 of the complaint, which alleges that ACH was subject to a "standard of practice" requiring it to provide reasonable care and treatment.  When passing on a motion to dismiss a nearly identical set of claims, the Eastern District of Michigan construed the references to the statutes and the "standard of practice" as alternative pleadings and for that reason refused to dismiss the negligence and malpractice claims pending before it.  *Gaines v. County of Wayne*, No. 20-cv-11186, 2021 WL 735785, at *3 (E.D. Mich. Feb. 25, 2021); *see also Shree Harihar Corp. v. Westfield Ins. Co.*, No. 23-cv-11090, 2024 WL 169562, at *4 (E.D. Mich. Jan. 16, 2024) ("Allegations in a complaint are not "dismissed," claims are dismissed.").  The Court adopts the same interpretation of the congruent claims in this case and declines to dismiss any of them.

On the merits, Defendants contend that Plaintiff should not be permitted to bring *any* direct claims against ACH because it is not an entity capable of medical malpractice.  Defendants provide no reason why a determination that ACH cannot be liable for malpractice precludes it from being sued for negligence.  If the law was as Defendants characterize it, ACH would effectively be immune from liability for its negligent acts.  The Court is aware of no authority in support of that proposition.  Rather, the Michigan cases, including those Defendants cite, stand for the uncontroversial proposition that a suit against an entity that *is* capable of malpractice (because it provides healthcare) must follow the detailed procedures established by the state's legislature.  *Est. of Swanzy ex rel. Swanzy v. Kryshak*, 970 N.W.2d 407, 412–13 (Mich. Ct. App. 2021).  Claims

that do not rely on the entity providing healthcare, such as negligent hiring or training, sound in ordinary negligence and are not barred by the entity's immunity from a malpractice claim in its own right.  This is why in *Estate of Swanzy* the Michigan Court of Appeals held that a nonprofit corporation was subject to liability for "negligent training, supervision, selection, and retention of staff" even though it could only be held vicariously liable for its doctor's malpractice.  *Id.* at 416; *cf. Warren v. Prison Health Servs., Inc.*, No. 2:12-cv-13, 2012 WL 4923812, at *2–3 (W.D. Mich. Oct. 16, 2012) (dismissing negligence claim against prison-healthcare provider that called for evaluation of provider's supervision of its employee doctors because the claim sounded in malpractice).

Here, Plaintiff alleges shortcomings in ACH's hiring, training, credentialing, documentation, and policymaking practices.  (Compl. ¶ 129.)  In her response to Defendants' objections, Plaintiff argues that her claim against ACH should be maintained because ACH, as the individual medical Defendants' principal, can be held directly liable for negligent hiring, training, and supervision.  (Pl.'s Resp. to Defs.' Objs. 9, ECF No. 90).  That is true, and to the extent Plaintiff's direct claim alleges ordinary negligence, it must be allowed to proceed.  But Plaintiff provides no basis for concluding that ACH can be directly liable for malpractice.  The Michigan Supreme Court has held that "the plain language" of section 600.5838a of the Michigan Compiled Laws—the statute determining who can be sued for medical malpractice, which neither party cites—defines professional corporations as entities through which "licensed health care professionals" can practice their profession and thus permits malpractice suits against them.  *Potter v. McLeary*, 774 N.W.2d 1, 12–13 (Mich. 2009).  The same statute extends that definition to any "other business entity."  *See Est. of Swanzy*, 970 N.W.2d at 415 (holding that a nonprofit corporation "qualifies as an 'other business entity'").

These statutory provisions only render professional and nonprofit corporations *vicariously* liable for the malpractice of their employees.  *See Potter*, 774 N.W.2d at 15 n.31 (citing MCL § 450.225); *Est. of Swanzy*, 970 N.W.2d at 415 (citing Mich. Comp. Laws § 450.2261(7)). Whether a for-profit corporation can be held directly liable for malpractice is a question not addressed by the parties.  Because the only direct claim against ACH that sounds in malpractice concerns negligent supervision, and because evaluating that claim depends on whether the individual medical Defendants were negligent, the Court declines to decide at this juncture the unbriefed issue of whether a malpractice claim against a for-profit corporation can be advanced. It is sufficient at present to find that at least one theory—the general negligence claim—for liability under the complaint's fourth claim is viable.

### C. Leave to Amend

The final issue presented by the R&R is the magistrate's recommendation that Plaintiff not be permitted to amend her complaint to include additional allegations sufficient to state an Eighth Amendment claim against ACH.  While the Court agrees that the complaint as it stands now "falls far short" of stating a plausible *Monell* claim, the Court, mindful of the liberal standard for allowing amendments followed in this circuit, *Lucas v. Chalk*, 785 F. App'x 288, 292 (6th Cir. 2019), dismisses the claim without prejudice.  Plaintiff may seek leave to file an amended complaint upon proper motion.

### III. CONCLUSION

In sum, most of Defendants' objections to the R&R do not succeed.  An individualized analysis of the medical-professional Defendants' conduct reveals no error in the recommendation that the Eighth Amendment claims against them be allowed to go forward.  And Plaintiff's reference to statutes that do not supply her with a cause of action against ACH does not foreclose finding the company liable on another state-law ground.  Accordingly,

**IT IS ORDERED** that the R&R (ECF No. 88) is **APPROVED** and **ADOPTED IN PART** with respect to the magistrate's recommended dismissal of the Eighth Amendment claim, and upholding of the state-law claims, against Defendant ACH as the opinion of the Court.

**IT IS FURTHER ORDERED** that Defendants' motion for summary judgment (ECF No. 43) is **GRANTED IN PART** with respect to the Eighth Amendment claim against ACH and **DENIED** as to Defendants Mary Lee Pakieser, Jessica Stevens, and Barbara Smith.  Consequently, the constitutional claims against Pakieser, Stevens, and Smith, and the state-law claims against ACH, remain pending.  None of the claims against the nonmoving Defendants are affected by this disposition.


Dated: March 21, 2025                                    _____
                                                         HALA Y. JARBOU
                                                         CHIEF UNITED STATES DISTRICT JUDGE